IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

MILDRED J. BENNETT,               :
                                  :
        Plaintiff,                :
                                  :
vs.                               :
                                  :     CIVIL ACTION 12-0695-M
CAROLYN W. COLVIN,                :
Commission of Social Security,    :
                                  :
        Defendant.                :


MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 16). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 25). Oral argument was waived in this action (Doc. 24). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Plaintiff was fifty-four years old, had completed a tenth-grade education (Tr. 27), and had previous work experience as a fish fileter (Tr. 432). In claiming benefits, Bennett alleges disability due to high blood pressure, headaches, an enlarged thyroid, tachycardia, mild mental retardation, and obesity (Doc. 17).

The Plaintiff filed an application for SSI on March 22, 2007 (Tr. 79-81; *see also* Tr. 397). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Bennett could return to her past work as a hand packager or fish fileter (Tr. 16-22). Plaintiff challenged that action in this Court where U.S. Magistrate Judge Bivins held that the Appeals Council had not properly considered newly-submitted evidence (Tr. 477-93); *see also Bennett v. Astrue*, 10-0005-B (S.D. Ala. January 3, 2011). On remand, following

2

another evidentiary hearing, the ALJ determined that although Bennett was not capable of doing any of her past relevant work, there were specific jobs that she could perform (Tr. 397-421). Plaintiff requested review of the hearing decision (Tr. 562) by the Appeals Council, but it was denied (Tr. 388-92).

In bringing this action, Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Bennett alleges that:  (1) The ALJ improperly discounted the opinions of a psychological consultant; and (2) she meets the requirements of Listing 12.05C (Doc. 16). Defendant has responded to—and denies—these claims (Doc. 20). The relevant evidence of record follows.[1]

Records from Robert C. Hatch High School show that Plaintiff's final scores, after completing her eighth grade studies, were a D in English, an F in Math, a C in Science, a D in Social Studies, and an A in Music (Tr. 589-91).  In ninth grade, Bennett scored D's in English and Science, an F in physical education, a C in Home Economics, and received an incomplete in Social Studies.

On June 25, 2009, Psychologist Donald Blanton examined Plaintiff and noted that she was obviously mentally retarded (Tr. 385; *see generally* Tr. 383-87).  The Psychologist noted

---

[1]The Court will review only the evidence that is relevant to the particular claims raised in this action.

3

that Bennett was "not sure about having had nervous trouble or depression, but thinks she is down sometimes. She has had no prior history of any mental health care" (Tr. 384). Blanton noted she responded to his questions very slowly; thoughts and conversation were simple, but logical. Associations were intact; affect was flat, but appropriate. No confusion was noted; Bennett denied any anxiety. Plaintiff was alert; her insight was limited and judgment was considered fair. Bennett reported that her daily activities included cooking, cleaning, mopping, and sweeping; she had a driver's license and did drive. Plaintiff attended church occasionally, had no hobbies or interests, and did not participate in parties or clubs. Psychologist Blanton administered the Wechsler Adult Intelligence Scale-IV (hereinafter *WAIS-IV*) on which Plaintiff scored 70 on verbal comprehension, 67 on perceptual reasoning, 71 on working memory, 71 on processing speed, and had a full scale IQ score of 64. Blanton indicated that these results placed her in the mild range of mental retardation. Bennett also took the Wide-Range Achievement Test (Revised III) (hereinafter *WRAT (R-III)*) on which she scored 66 in reading (fourth-grade level), 63 in spelling (fourth-grade level), and 75 in arithmetic (fifth-grade level). The Psychologist indicated his belief that these tests were a valid assessment of her intellectual functioning as "there were no distracting

factors during the testing session and she appeared to put good effort into her work" (Tr. 386). He diagnosed Bennett to have mild mental retardation. Blanton went on to express the opinion that Plaintiff had "marked limitations that seriously interfere[d] with her ability to perform work related activities on a day to day basis in a routine work setting in . . . (1) understanding detailed or complex instructions[;] (2) carrying out detailed or complex instructions[;] (3) remembering detailed or complex instructions[; and] (4) using judgment in detailed or complex work related decisions" (Tr. 387). The Psychologist further indicated that Bennett's mental retardation was a lifelong condition.

On March 24, 2011, Psychologist Richard S. Reynolds examined Plaintiff who denied any history of psychiatric treatment; she had never sought treatment although she reported severe symptoms of depression (Tr. 603-09). Bennett reported crying all the time, having a low mood, always feeling down, having very low energy, feeling significant hopelessness, and often feeling irritable; the Psychologist noted that these symptoms appeared exaggerated, finding her mildly dysphoric. Reynolds noted that Plaintiff described self-care and daily functioning. Bennett stated that she completed tenth grade in regular classes; she did her own cooking and housework, managed her own finances, went grocery shopping with her daughter, and

5

spent her time talking to friends or watching television.
Plaintiff was oriented in all spheres with articulate speech;
thought content appeared logical while associations were tight.
Recent and remote memory were intact; insight was appropriate to
situation while judgment was appropriate by daily self-care.  On
the WAIS-IV, Bennett received a Full Scale IQ score of 52.
Psychologist Reynolds expressed the opinion that the scores were
invalid as Plaintiff gave poor effort; he specifically noted
that her abilities in general information, vocabulary, and
verbal abstract reasoning were greater during the interview than
the test scores demonstrated.  He further noted that her claimed
symptoms were significantly greater than the interview would
support; the Psychologist stated that when he questioned Bennett
about her symptoms, she became vague and elusive.  It was
Reynolds's opinion that Plaintiff was "able to understand
remember and carryout instructions in a work setting[;] able to
appropriately interact with supervisors [and] co-workers in a
work setting[; and did] not demonstrate significant impairment
due to depression or other psychiatric disorder" (Tr. 608).  It
was the Psychologist's opinion that Bennett may suffer from
Adjustment Disorder with depressed mood due to medical
difficulties; he stated that he reviewed her medical records in
reaching this conclusion.  Reynolds also completed a mental
medical source opinion form in which he indicated that Plaintiff

had no restrictions in her ability to understand and remember
simple or complex instructions; carry out simple or complex
instructions; or make judgments on simple or complex work-
related decisions (Tr. 603).  Psychologist Reynolds also
expressed the opinion that Plaintiff would have no limitations
in her ability to interact appropriately with the public,
supervisors, or co-workers or respond appropriately to usual
work situations or to changes in a routine work setting (Tr.
604).

On June 15, 2011, Psychologist Blanton again examined
Bennett who was complaining of migraine headaches (Tr. 619-23).
She reported being sad all of the time, being depressed, crying
a lot about everything, and having panic attacks two-to-three
times a week; Plaintiff said that she began having emotional
problems a long time ago; she had no prior history of any mental
health care.  Blanton stated that Bennett was easily confused
while also stating that "[n]o confusion was noted" (Tr. 620).
The Psychologist found that she had a hard time recalling events
and dates in her life; thoughts and conversation were logical.
Plaintiff was alert, associations were intact, and affect was
flat but appropriate; mood was depressed and Bennett cried
often.  Blanton noted that she appeared to have a slight
psychomotor retardation; she reported having been suicidal at
times, though she had made no attempts on her life.  Insight was

limited and judgment was fair.  Bennett reported that she cooked
and cleaned with help from her daughter and was able to shop and
handle money; she attended church occasionally and spent most of
her day watching television and napping.  On the WAIS-IV,
Plaintiff scored a 61 on verbal comprehension, 73 on perceptual
reasoning, 69 on working memory, 71 on processing speed, and had
a full scale IQ score of 63, placing her in the mild range of
mental retardation.  On the WRAT (R-III), Bennett scored a 47 in
reading (second-grade level), a 51 in spelling (second-grade
level), and a 65 in math (third-grade level).  Blanton noted
that the MMPI was omitted due to the combination of Plaintiff's
low intellect and poor reading ability; the examiner helped her
with the Beck Depression Inventory-II on which she scored in the
seriously depressed range.  The Psychologist thought that the
test results were a valid assessment of her intellectual
functioning as there were no distractions and Bennett had put
forth good effort; he found her to be functionally illiterate
and significantly depressed, referring her to a local mental
health center.  In his assessment, Blanton diagnosed Plaintiff
to suffer from major depression, a panic disorder with
agoraphobia, and mild mental retardation.  The Psychologist
expressed the opinion that Bennett had marked limitations that
would interfere with her ability to do the following:
understand, carry out, and remember detailed or complex

instructions; use judgment in detailed or complex work-related decisions; maintain attention and concentration and pace for at least two hours; and respond to customary work pressure. It was Psychologist Blanton's opinion that Bennett's mental retardation was a lifelong condition and that her depression and anxiety had been present for at least one year. He further noted that she had deficits in adaptive functioning in her ability to communicate, take care of her self, work, and use community resources that had been manifest prior to turning twenty-two years old.

Records from the Cahaba Mental Health Center show that, on June 20, 2011, Plaintiff reported to the Center that she had been referred to by her treating physician for depression (Tr. 625-29). She was described as dysphoric, irritable, and paranoid; judgment was adequate. Bennett had no homicidal or suicidal thoughts; she stated that she cried sometimes for no known reason. On July 20, Plaintiff was anxious and dysphoric; she described her sleep as poor. Bennett reported restlessness due to back and leg pain.

The ALJ faithfully summarized the medical evidence and found that Bennett was capable of performing less than a full range of light work, naming specific jobs that she could perform (Tr. 397-421). In reaching this determination, the ALJ found that Plaintiff had no severe mental impairments (Tr. 400), a

finding not challenged in this action (*see* Doc. 16).  The ALJ also found that Bennett's testimony regarding her abilities and limitations was not credible (Tr. 406-06, 408, 414-15, 419); this finding has also gone unchallenged.

In bringing this action, Plaintiff has asserted that the ALJ improperly discounted the opinions of a psychological consultant.  More specifically, Bennett asserts that the conclusions of Psychologist Blanton were rejected for no valid reason (Doc. 16, pp. 2-6).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[2] *see also* 20 C.F.R. § 404.1527 (2013).

In her determination, the ALJ accepted Blanton's findings that Plaintiff had some marked limitations (Tr. 416), but rejected his finding that she had marked limitations "in her ability to maintain attention, concentration and pace for at least two hours," noting that she had undergone a set of psychological tests under his direction, showing the capability

---

[2] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

of completing the tests in a timely manner while putting forth good effort (Tr. 418).  The ALJ also rejected Blanton's finding that Bennett was markedly limited in her ability to respond to customary work pressure, noting that Plaintiff's own statements to Psychologist Reynolds had indicated otherwise (Tr. 418).  The ALJ went on to discount Blanton's opinions that Bennett had a lifelong mental deficiency (Tr. 416) and demonstrated deficits in adaptive functioning due to mental retardation (Tr. 419).[3] Finally, the ALJ found that "Dr. Blanton's opinions are without substantial support from the other evidence of record and the doctor's reports appear to contain inconsistencies, which obviously renders them less persuasive" (Tr. 419).

The Court finds substantial support for the ALJ's rejection of Blanton's conclusions.  Primarily, the Court notes that his findings are at direct odds with those of Psychologist Reynolds whose opinions were given "considerable probative value" by the ALJ (Tr. 417).  The Court agrees with the ALJ's conclusion that Blanton's findings were internally inconsistent; for example, in his second examination, Blanton stated that Bennett was easily confused while also stating that "[n]o confusion was noted" (Tr. 620).  Finally, there is no other evidence in the record to support the marked limitations suggested by the Psychologist.

---

[3]The Court finds substantial supports for these two conclusions but will discuss them in analyzing Plaintiff's claim that she meets the requirements of Listing 12.05C.

The Court finds Plaintiff's claim that the ALJ did not properly consider the conclusions of Psychologist Blanton to be without merit.

Bennett next claims that she meets the requirements of Listing 12.05C (Doc. 16, pp. 6-7).  The introductory notes to Section 12.05 state that "[m]ental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2013).  Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2013).

The Court notes that although the regulations require that Plaintiff demonstrate that she suffered "deficits in adaptive behavior" before she turned twenty-two, 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2013), the Eleventh Circuit Court of Appeals, in *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), has held "that there is a presumption that mental retardation is a condition that remains constant throughout life."  The *Hodges* Court further held "that a

claimant need not present evidence that she manifested deficits
in adaptive functioning prior to the age of twenty-two, when she
presented evidence of low IQ test results after the age of
twenty-two." *Hodges*, 276 F.3d at 1266.

In her determination, the ALJ found that Bennett did not
meet the requirements of Listing 12.05C (Tr. 401).  In reaching
this determination, the ALJ found that Plaintiff had only mild
restrictions of daily living and social functioning, pointing to
her own statements to Psychologists Blanton and Reynolds (Tr.
401-02).  Bennett had moderate difficulties with regard to
concentration, persistence, or pace, relying on the
Psychologists' reports that she had completed testing in a
timely manner and been "able to understand, remember and carry
out instructions in a work setting;" Blanton had even noted that
Plaintiff put forth good effort (Tr. 402).  The ALJ found that
Bennett had never experienced any episodes of decompensation of
extended duration, noting that she had never required any
treatment or had been specifically accommodated so that she
could complete her work assignments (Tr. 402).  The ALJ noted
that Plaintiff was not dependent on others for her personal
needs; the evidence also demonstrated that she was able to
follow instructions (Tr. 403).  The ALJ went on to find that
Plaintiff did not have deficits in adaptive behavior that had
been manifest before she turned twenty-two years of age,

13

specifically finding the following:

> This claimant has lived independently and
> has been the responsible adult figure for
> her own family.  There is no indication in
> the record that any employer has ever given
> the claimant any special consideration due
> to any alleged mental deficiency or that any
> employer has ever even noticed any alleged
> mental deficiency on the part of the
> claimant.  The claimant holds a valid
> Alabama drivers' license and the claimant
> testified that she took the written
> examination to pass.  There is no indication
> in the record that the claimant was in
> "special education" or any other program for
> mentally deficient persons or that anyone at
> any one of the claimant's schools ever
> noticed any alleged mental deficiency.  The
> claimant reported that she was never
> retained in school.  She has never been
> institutionalized or hospitalized for any
> alleged mental or emotional impairment.  The
> record does not indicate that the claimant
> ever suffered from any alleged mental
> impairment or that claimant's alleged mental
> deficiency manifested itself until after she
> was denied disability for physical
> complaints.  The claimant was well oriented
> at the hearing as to time, place and
> situation.

(Tr. 403-04).

   The Court finds substantial support for the ALJ's

conclusions.  The Court is mindful of the *Hodges* presumption

that "mental retardation is a condition that remains constant

throughout life," but finds, in spite of the IQ test scores

reported by Psychologist Blanton, that the ALJ has fairly and

objectively rebutted that presumption in this action.  The

14

evidence of record belies the claim that Bennett has been mentally retarded her whole life.

Plaintiff has raised two claims in bringing this action. Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 24th day of July, 2013.


                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE